261 So.2d 252 (1972)
NEW ORLEANS SILVERSMITHS, INC.
v.
Algert J. TOUPS.
No. 4739.
Court of Appeal of Louisiana. Fourth Circuit.
April 18, 1972.
Rehearing Denied May 16, 1972.
Writ Refused June 22, 1972.
*253 A. D. Freeman, Jr., L. K. Clement, Jr., New Orleans, for plaintiff-appellant.
Chaffe, McCall, Phillips, Toler & Sarpy, Harry T. Howard, III, New Orleans, for defendant-appellee.
Before LEMMON, GULOTTA and STOULIG, JJ.
STOULIG, Judge.
This appeal taken by the plaintiff from an adverse judgment rendered by the trial court involves the ranking of the rights of pledgees arising under two collateral mortgages executed by the defendant, Algert J. Toups, as security for loans and advances made to him.
The pertinent facts relative to the adjudication of the issue presented may be chronologically stated as follows: On June 16, 1967, Toups executed a collateral mortgage on certain realty in the sum of $150,000, which he later pledged to The Hibernia National Bank in New Orleans on June 22, 1967, for a loan of $75,000. Though the Bank was unable to produce the hand note or other evidence of this pledge, the trial court accepted the statements of G. Albert Knelsel, a vice president of the Bank, that payment was secured by the pledge of the $150,000 collateral mortgage note of June 16, 1967. As Toups was unable to meet the payment of the obligation when due, the Bank renewed this loan with a new hand note dated December 10, 1968. This note is presently in default.
During the interim between the initial hand note to Hibernia Bank and its renewal in December 1968, Toups, being in need of additional financing, executed a second collateral mortgage dated October 16, 1968, in the amount of $50,000, which he pledged on the same day as security for a loan of $35,000 from the plaintiff. Part of the realty recited in the second mortgage included the identical property listed in the first collateral mortgage.
In addition to Mr. Toups individually, the corporation bearing his name borrowed from The Hibernia National Bank on November 2, 1968, the sum of $30,000; on November 26, 1968, $35,000; and on December 31, 1968, $30,000. These loans were renewed from time to time by the execution of new notes and were ultimately merged into two notes dated May 27 and June 4, 1969, in the respective sums of $60,000 and $35,000. Both of these obligations were personally endorsed by Mr. Toups. As additional security the collateral mortgage note dated June 16, 1967, then in the possession of the Bank was pledged to guarantee payment. These notes are likewise in default and are involved in the ranking of the rights of the opposing parties.
The subsequent default in the payment of the obligation owed to the plaintiff led to the filing of the foreclosure proceedings in this matter. Defendant The Hibernia National Bank intervened to have its rights under its collateral mortgage recognized in preference over that of plaintiff.
The trial court decreed that the rights of The Hibernia National Bank as pledgee of the collateral mortgage dated June 16, 1967, pledged for the loans of A. J. Toups and of A. J. Toups Co., Inc., shall prime the *254 rights of the plaintiff, New Orleans Silversmiths, Inc., as pledgee of the collateral mortgage dated October 16, 1968.
It is well established by jurisprudence that mortgages for the purpose of creating collateral to be used as security for the payment of debts or obligations not yet in existence but to be made in the future are sanctioned under LSA-C.C. arts. 3292 and 3293. This type of obligation is a contingent encumbrance which departs from the accessory concept of the ordinary conventional mortgage requiring a primary or principal debt. LSA-C.C. arts. 3285 and 3411(4); Thrift Funds Canal, Inc. v. Foy, La., 260 So.2d 628 (1972). Its legal efficacy against third persons is contemporaneous with the execution of the hand note for the payment of which it is given in pledge.
There is no dispute that the collateral mortgages pledged to the plaintiff and to The Hibernia National Bank were validly confected and duly recorded. Neither the loans nor the advances made in connection therewith are in question. Only the respective rights of the pledgees are in contest.
Plaintiff, relying upon the jurisprudence expressed in the case of Rex Finance Company v. Cary, 145 So.2d 672 (La. App. 4th Cir. 1963)[1] maintains that its loan of $35,000 should rank behind the first Hibernia Bank loan of $75,000. Under the rationale of the Rex case the collateral mortgage held by Hibernia Bank became effective as of June 22, 1967, the date of the initial hand note, also being the date of its pledge. The renewal of the personal note with the note of December 10, 1968, was merely an extension of the maturity date originally prescribed in the June 22, 1967 obligation and did not constitute a novation. Therefore, the lien resulting from the collateral mortgage hypothecation continued to be from the date of its original pledge on June 22, 1967, and must be ranked in priority based upon this date.
Defendant concedes that these propositions of law are generally applicable to collateral mortgages but insists that under the provisions of LSA-C.C. art. 3158 its two loans to the corporation also prime the plaintiff's loan.
Article 3158 of the Civil Code originally prescribed the procedure for effecting a valid pledge of a written obligation. To affect third persons it required written evidence of a pledge coupled with manual delivery of the instrument with good faith on the part of all the parties involved. No attack has been leveled against the Bank's failure to comply with any of these requisites or that it acted in bad faith.
By Act 290 of 1952, the Legislature amended this article to impart a retrospective effect to all subsequent advances to the date of the initial loan, provided: (a) the initial pledge was properly confected; (b) each succeeding loan was specifically secured by a pledge of the instrument; (c) *255 the parties had mutually agreed at the time of the original pledge that it would also secure any obligations or liabilities of the pledgor then existing or thereafter arising to the limit of the pledge; and (d) all of the aforegoing being subject to the pledged instrument continuously remaining in the hands of the pledgee and the parties acting in good faith at all times. The retroactive effect created by this statute may, by mutual consent, be made applicable not only to renewal of the primary loan but to new or additional loans, even though the original obligation has been fully paid. Further, such renewals, subsequent loans, additional advances, or other obligations shall be secured by the collateral pledged to the same extent as if made at the time the initial loan and pledge was executed.
The pertinent segments of LSA-C.C. art. 3158 provides as follows:
"[I]t is further provided that whenever a pledge of any instrument or item of the kind listed in this article is made to secure a particular loan or debt, or to secure advances to be made up to a certain amount, and, if so desired or provided, to secure any other obligations or liabilities of the pledger to the pledgee, then existing or thereafter arising, up to the limit of the pledge, and the pledged instrument or item remains and has remained in the hands of the pledgee, the instrument or item may remain in pledge to the pledgee or, without withdrawal from the hands of the pledgee, be repledged to the pledgee to secure at any time any renewal or renewals of the original loan or any part thereof or any new or additional loans, even though the original loan has been reduced or paid, up to the total limit which it was agreed should be secured by the pledge, and, if so desired or provided, to secure any other obligations or liabilities of the pledger to the pledgee, then existing or thereafter arising, up to the limit of the pledge, without any added notification or other formality, and the pledge shall be valid as well against third persons as against the pledger thereof, if made in good faith; and such renewals, additional loans and advances or other obligations or liabilities shall be secured by the collateral to the same extent as if they came into existence when the instrument or item was originally pledged and the pledge was made to secure them * * *."
No need exists to consider the provisions of Article 3158 in connection with the $75,000 note dated December 10, 1968, held by The Hibernia National Bank since we have previously determined that it primes all other obligations. However, it is essential that we review the hand notes and other ancillary agreements executed by Mr. Toups in favor of The Hibernia National Bank in connection with the A. J. Toups Co., Inc., loans to ascertain if they qualify under the retrospective provisions of LSA-C.C. art. 3158. If so, they would revert to the date of the initial loan of June 22, 1967, thereby preempting the prior loan and mortgage held by the plaintiff dated October 16, 1968.
An examination of the notes executed by A. J. Toups Co., Inc. (Exhibits H-4 and H-5), recites that the endorser, in this instance Algert J. Toups personally, jointly, severally, and in solido, unconditionally guaranteed to The Hibernia National Bank the payment of this obligation and of any extensions or renewals thereof. It further stipulates that these notes and any extensions or renewals thereof and every other debt, liability obligation to The Hibernia National Bank "whether direct or indirect, absolute or contingent, liquidated or unliquidated, due or to become due, and whether now existing or hereafter arising, of the parties hereto, as defined in this note," shall be secured by the pledge of the securities listed on the reverse side of the instrument. Inscribed immediately below the preceding provision and above the signature of Algert J. Toups was the following:
"* * * [A]lso this note is identified with and secured by pledge agreement *256 dated February 10, 1969, signed by Algert J. Toups Collateral Mortgage. May 27, 1969."
It must be noted that the pledge agreement of February 10, 1969, and the loan instrument of Algert J. Toups individually, bearing the date of June 22, 1967, and renewed December 18, 1968 (H-3), contained the identical stipulations above quoted.
These loan instruments and contemporaneous supporting documents are clear and unambiguous in all of their terms. The obvious tenor of these documents is to fully utilize the retrospective privilege afforded by LSA-C.C. art. 3158. Being contractual in nature and permitted by statute they become the law governing these loan transactions between the parties. Furthermore being in strict compliance with the statute and there being no evidence of bad faith on the part of the parties involved, the lien rights created thereunder are effective against third parties as prescribed in the statute, that is, they shall revert in the point of time to the date of the initial pledge.
Accordingly we conclude that the lien rights arising under the collateral mortgage dated June 16, 1967, and pledged to secure the notes of Algert J. Toups individually and those of A. J. Toups Co., Inc., revert to June 22, 1967, the date of the initial loan and pledge. Therefore these lien rights are superior to and prime those of the plaintiff, New Orleans Silversmiths, Inc., arising out of the collateral mortgage dated October 16, 1968, and pledged to secure the individual loan of Algert J. Toups in the sum of $35,000. The rights of The Hibernia National Bank in the collateral mortgage note pledged to it are limited to the principal obligation of $150,000, accrued interest and attorney's fees.
For these reasons the judgment of the trial court is affirmed. All costs of this appeal are to be borne by the appellant.
Affirmed.
LEMMON, Judge (dissenting).
I agree with the majority that the collateral mortgage departs to some extent from the concept that mortgage is an accessory security device founded upon a principal debt. While the note is retained by the mortgagor, the mortgage has existence without a principal debt, but it is not until a principal debt comes into existence and the note is issued (or reissued) to secure that debt that the mortgage is effective against third persons. Hammond State Bank and Trust Co. v. Broderick, 179 La. 693, 154 So. 739 (1934); Odom v. Cherokee Homes, Inc., supra.
Therefore, even with a collateral mortgage, the existence of a principal debt is required for the accessory obligation to affect third persons.
In the present case the collateral mortgage became effective against third persons, to the extent of $75,000.00, on June 27, 1967, the date that a loan in that amount was made by Hibernia to Toups. But in my opinion the collateral mortgage did not become effective against third parties in an amount over $75,000.00 until after plaintiff's mortgage had been inscribed in the mortgage records and had taken effect itself.
The majority apparently agrees with me to this point, but believes that the 1952 amendment to C.C. art. 3158 gives retrospective effect to the loans made by Hibernia to Toups after plaintiff's mortgage was executed. I dispute this view.
C.C. art. 3158 is found in Title XX, Of Pledge and is a pledge article, not a mortgage article. This article simply allows the thing given by the pledgor to secure his debt to be used to also secure his good faith future indebtedness as of the date of the original pledge, as long as the thing remains in the hands of the pledgee. I believe that the majority erred in using C.C. art. 3158 (a pledge ranking article) to rank mortgages.
*257 By its terms the article applies to written obligations. Thus, if A gives a mortgage on his land to B to secure a loan, and subsequently B needs money, B can pledge A's mortgage note to C as security for B's loan from C. The thing pledged is the note, not the land and the existing mortgage on the land is not affected. The pledge gives a ranking preference on the note, not on the land.
However, the character and extent of A's mortgage is not affected in any way by B's pledge of the note to secure his own indebtedness. And it is the future indebtedness of B, not A, to which C.C. art. 3158 permits retrospective effect to the date of the original pledge. I do not believe that C.C. art. 3158, which concerns with the ranking of pledges, is applicable to this case, which concerns the ranking of mortgages.
Toups, in order to secure his own indebtedness, pledged to Hibernia a collateral mortgage note that he himself executed on his own property. There was no obligation in existence at the time the note was executed and until the note was pledged. The only inscription in the mortgage records was the collateral mortgage, which contained no provisions regarding pledge or future advances. Only the note contained language referring to debts subsequently arising.
To secure a $75,000.00 loan, Toups pledged a $150,000.00 collateral mortgage note which then became effective against third persons, but only to the extent of $75,000.00. This amount was therefore the "limit of the pledge" contemplated by C.C. art. 3158, since it was the effective limit of the debt secured by the thing pledged. Stated otherwise, since the mortgage itself was not effective against third parties for more than $75,000.00, the note secured by the mortgage (the note being the thing pledged) could not be effective to a greater extent.
Furthermore, it was not until Hibernia made the loan of an additional $30,000.00 to Toups that the collateral mortgage became effective against third parties in that additional amount, and the collateral mortgage note which remained pledged then also became effective to that additional extent. The total amount of $105,000.00 then became the limit of the pledge. BUT before this additional amount became effective against third parties, plaintiff had already made the loan to Toups.
In my opinion, therefore, plaintiff's mortgage therefore outranks the additional mortgages in favor of Hibernia subsequent to the original $75,000.00 loan.
NOTES
[1] "* * * It appears, however, to be well settled in the jurisprudence of this State that a lien resulting from the recordation of a mortgage securing a collateral mortgage note arises not from the registry of the act of mortgage but from the date the note is pledged to secure a loan or other indebtedness, inasmuch as, prior to that date, there is no debt nor obligation to be secured, a prerequisite to the existence of a mortgage. * * * Walmsley v. Resweber, 105 La. 522, 30 So. 5; LSA-C.C. Art. 3293. [See also Odom v. Cherokee Homes, Inc., 165 So. 2d 855 (La.App. 4th Cir. 1964)].

* * * * * *
"* * * The surrender of the original evidence of the debt and the substitution of new evidence therefor did not operate as an extinguishment of the obligation. An extension of the maturity of the obligation only was changed. * * * Novation is not to be presumed and the intention to make it must clearly result from the terms of the agreement or by a full discharge of the original debt. * * *
"Nor, does a pledgee, by the merger of the debts, lose any of its rights. * * *" 145 So.2d at 676-678.