457 So.2d 667 (1984)
TEXAS BANK OF BEAUMONT
v.
Kazem Michel BOZORG.
No. 84-C-0508.
Supreme Court of Louisiana.
October 15, 1984.
Rehearing Denied November 15, 1984.
*669 Jerome K. Lopsich, Max Nathan, Jr., Sessions, Fishman, Rosen, Boisfontaine & Nathan, New Orleans, Richard T. Regan, Francipane, Regan & St. Peé, Metairie, for intervenor-applicant.
Thomas G. Donelon, Kenner, for plaintiff.
Kazem Michel Bozorg, pro se.
LEMMON, Justice.
This case involves the ranking of two collateral mortgages executed by Kazem Bozorg, one of which was held by Texas Bank of Beaumont (TBB), the foreclosing creditor, and the other by Massey-Ferguson, Inc. (MFI), who intervened in the executory proceedings. Several important issues are presented regarding the rights to ranking under La.C.C. Art. 3158 when the holder of the collateral mortgage note is not the original pledgee.

I.
On August 12, 1975, Bozorg executed a collateral mortgage note and mortgage in the amount of $200,000, which was the *670 mortgage on which TBB eventually foreclosed. Bozorg contemporaneously executed a $200,000 hand note, and he pledged the collateral mortgage note to First Metropolitan Bank of Jefferson Parish (FMB) to secure the indebtedness represented by the hand note. The mortgage was duly recorded.
On September 11, 1978, Bozorg executed another collateral mortgage note and mortgage, this time in the amount of $344,406.59. He pledged that note the same day to MFI to secure the payment of a hand note in the same amount. In this act of mortgage, Bozorg committed himself not to increase the indebtedness secured by the August 12, 1975 collateral mortgage and instructed FMB not to increase the indebtedness (which had been reduced to $96,000).[1] The mortgage was duly recorded.
On January 4, 1980, by notarial act and for the stated consideration of $88,025.34, FMB transferred and assigned to TBB "all its rights, title, interest, priority, and privilege in connection with a certain collateral mortgage note, dated August 12, 1975, in the principal sum of TWO HUNDRED THOUSAND AND NO/100 ($200,000.00) DOLLARS, payable on demand to the order of Bearer and signed by Kazem Bozorg; and a collateral mortgage by act before Robert J. Skinner, Notary Public, on August 12, 1975, mortgaging in favor of any person, firm, or corporation the following described real estate...." Bozorg's balance then due on the $200,000 note was $88,025.34, including principal and interest.
On February 4, 1980, Bozorg executed a hand note in the amount of $200,000 and pledged the August 12, 1975 collateral mortgage note to TBB to secure the hand note.
TBB filed these executory proceedings on February 11, 1981, alleging that the $200,000 note of February 4, 1980 was in default and seeking to enforce the August 12, 1975 mortgage by having the mortgaged property seized and sold.[2] MFI intervened, seeking to have its September 11, 1978 mortgage recognized and ranked as superior to TBB's mortgage.
The trial court rendered judgment in favor of MFI, finding that TBB had paid off and extinguished the original debt and therefore was not entitled to retroactive ranking under La.C.C. Art. 3158. The court emphasized that TBB's suit was not on the original hand note given in 1975, but on the new note given to TBB on February 4, 1980.
The court of appeal reversed, holding that TBB was entitled to retroactive ranking based on the 1975 collateral mortgage. 444 So.2d 698 (La.App. 5th Cir.1984). The court concluded that FMB had assigned the entire collateral mortgage package, including the hand note, to TBB and that TBB had proved compliance with the requirements for retroactive ranking for "other obligations thereafter arising" under Article 3158, as interpreted in New Orleans Silversmiths, Inc. v. Toups, 261 So.2d 252 (La.App. 4th Cir.1972), cert. den. 262 La. 309, 263 So.2d 47. We granted certiorari. 449 So.2d 1342 (La.1984). We now reverse in part, concluding that TBB established by a preponderance of the evidence that the *671 January, 1980 transaction was at least a payment with subrogation which preserved the 1975 collateral mortgage ranking as to Bozorg's then-existing principal obligation, but failed to establish that the parties agreed in the 1975 contract of pledge that the pledge was intended to secure other of Bozorg's obligations which arose after the date of the 1975 contract of pledge.

II.
The collateral mortgage is a form of conventional mortgage developed by Louisiana practitioners.[3] This mortgage does not directly secure an existing debt, but is designed to create a mortgage note for a fictitious debt that can be pledged as collateral security for a real debt. Because the mortgagor, after executing the collateral mortgage and the collateral mortgage note, pledges the collateral mortgage note as security for a debt, usually represented by a separate hand note, the collateral mortgage scheme combines the security devices of pledge and mortgage.[4] See Nathan and Marshall, The Collateral Mortgage, 33 La.L.Rev. 497, 498 (1977).
In 1952, the Legislature amended La.C.C. Art. 3158 to provide in pertinent part:
"[I]t is further provided that whenever a pledge of any instrument or item of the kind listed in this article is made to secure a particular loan or debt, or to secure advances to be made up to a certain amount, and, if so desired or provided, to secure any other obligations or liabilities of the pledger to the pledgee, then existing or thereafter arising, up to the limit of the pledge, and the pledge instrument or item remains and has remained in the hands of the pledgee, the instrument or item may remain in pledge to the pledgee or, without withdrawal from the hands of the pledgee, be repledged to the pledgee to secure at any time any renewal or renewals of the original loan or any part thereof or any new or additional loans, even though the original loan has been reduced or paid, up to the total limit which it was agreed should be secured by the pledge, and, if so desired or provided, to secure any other obligations or liabilities of the pledger to the pledgee, then existing or thereafter arising, up to the limit of the pledge, without any added notification or other formality, and the pledge shall be valid as well against third persons as against the pledger thereof, if made in good faith; and such renewals, additional loans and advances or other obligations shall be secured by the collateral to the same extent as if they came into existence when the instrument or item was originally pledged and the pledge was made to secure them;"
Thus, the Legislature provided for a privilege when an instrument (such as a collateral mortgage note) is pledged (1) to secure a particular debt; (2) to secure advances to be made up to a certain amount (a pledge to secure loans of future amounts which the lender obligates himself to advance); and (3) to secure other obligations of the pledgor to the pledgee which may thereafter arise (a pledge to secure loans of amounts which the pledgee does not obligate himself to advance). The mortgage to secure a particular debt is effective against third parties from the date of recordation. The ordinary mortgage to secure future advances (such as a mortgage providing construction financing in stage payments), having retroactive effect to the time of the contract once the mortgagee has fulfilled his promise to make the advances, is also effective against third parties from the date of recordation. See La.C.C. Art. 3293. However, a mortgage to secure optional loans which may be made in the future does not take effect against third persons upon recordation, but only from the (later) *672 date that an actual debt is contracted and the mortgage note is pledged to secure that indebtedness. See Meeker v. Clinton & P.H.R.R., 2 La.Ann. 971 (1847).
The 1952 amendment to Article 3158 was designed to permit the mortgagor to pledge a collateral mortgage note to secure a particular debt, either previously existing or contracted contemporaneously with the pledge, and to secure future loans by the pledgee to the pledgor (up to the limits of the pledge). The pledge privilege has been held to be effective against third persons as to future loans (for which the collateral mortgage note is subsequently repledged) from the date of the initial contract of pledge, as long as the parties mutually agreed in the initial contract of pledge that the pledge was to secure obligations thereafter arising and the pledges were made in good faith. New Orleans Silversmiths, Inc. v. Toups, above.
In a contest involving ranking of mortgages, each claimant has the burden of proving the effective date of his mortgage as to third persons. MFI proved that its collateral mortgage became effective against third persons on September 11, 1978. Since Bozorg had pledged the August 12, 1975 collateral mortgage note to secure a particular loan of $200,000 made the same day, FMB's collateral mortgage was effective against third persons (at least as to the particular $200,000 loan) from the date of the August 12, 1975 pledge and would have ranked superior to MFI's collateral mortgage pledged on September 12, 1978, as long as the collateral mortgage note pledged to FMB remained in the hands of the pledgee. However, FMB did not retain the collateral mortgage note pledged in 1975, and this case presents two principal issues:
(1) Whether TBB proved that it succeeded to FMB's rights in the pledged collateral by virtue of the 1980 transaction; and
(2) Whether TBB proved that it was entitled to retroactive ranking, with an effective date against third persons of August 12, 1975, for the loan TBB made to Bozorg in February, 1980.

III.
As to TBB's claim to $88,025.34, MFI contends that TBB failed to prove that the transaction preserved, rather than extinguished, the principal obligation. MFI argues that TBB is only entitled to ranking on the date that the 1975 collateral mortgage note was repledged in February, 1980.
If the January 4, 1980 transaction was an assignment[5], or a payment with subrogation[6], or even a novation with reservation of the pledge privilege and mortgage[7], by FMB to TBB of Bozorg's principal obligation (represented by the hand note), then the transaction would have given TBB the rights of FMB in the pledged collateral, including the mortgage ranking from the date of the pledge to FMB, i.e., August 12, 1975. If, on the other hand, the *673 transaction was a payoff of the principal obligation without subrogation or reservation of the privilege and mortgage, then the accessory obligation under the contract of pledge was also extinguished, and TBB's mortgage ranking takes place only from the date the collateral mortgage note was repledged to secure the new obligation to TBB. See Odom v. Cherokee Homes, Inc., 165 So.2d 855, 865 (La.App. 4th Cir.1964).
On the day of the transaction in question, FMB was the owner only of Bozorg's obligation to pay the $88,025.34 balance on the $200,000 hand note. FMB did not own the collateral mortgage note, but merely held it in pledge, since the debtor remains the proprietor of the pledge which is in the hands of the creditor only as a deposit to secure the privilege on it. La. C.C. Art. 3166. Consequently, FMB could not sell Bozorg's collateral mortgage note which it did not own. FMB could, however, sell Bozorg's principal obligation and could accept payment with subrogation of its rights in the collateral mortgage note.
TBB contends that it did indeed buy Bozorg's principal obligation to FMB represented by the hand note. There is no evidence that the existing principal obligation evidenced by the hand note was ever assigned to TBB. If the hand note was a bearer note, it could have been negotiated merely by delivery. However, since TBB concedes that the hand note was not part of the act of assignment and since TBB otherwise failed to produce the hand note or to present testimony that it was a bearer note, there is no evidence that the hand note was a bearer note.[8] TBB also failed to explain the nonproduction of the hand note and failed to call any of its officers or representatives who were involved in the transaction. The only evidence presented by TBB as to the 1975 hand note was a bank officer from FMB who merely testified that the hand note was no longer in his files. He could not remember what happened to the hand note, and he could not say that the hand note was endorsed over to TBB. Moreover, he could not deny that the hand note was either marked paid or was returned to Bozorg when FMB received full payment.[9]
The bank officer did testify, however, that the parties intended for TBB to buy FMB's "collateral position". This evidence, while insufficient to show that the principal obligation was assigned to TBB, does show that the debt (if paid rather than purchased) was paid by TBB on the condition that FMB's "rights" in the collateral mortgage were transferred to TBB. Accordingly, although TBB may have failed to prove that the transaction was an assignment which preserved the existence of Bozorg's principal obligation, TBB did prove at least that it paid the principal obligation with subrogation to FMB's "privileges and mortgages". See La.C.C. Art. 2160(1).
*674 We therefore conclude that the $88,025.34 paid by TBB to FMB, whether to purchase Bozorg's indebtedness or to lend Bozorg the money to pay his indebtedness, remained at all times secured by the pledge of Bozorg's earlier collateral mortgage note, effective as of August, 1975. On similar reasoning, we also conclude that the inclusion of that first $88,025.34 indebtedness in the $200,000 note of February 1, 1980 did not cause any loss or rank as to that $88,025.34.

IV.
The remaining issue is whether TBB is also entitled to retroactive ranking in respect to the part of the $200,000 note of February, 1980 which was in excess of $88,025.34.
In New Orleans Silversmiths, Inc. v. Toups, above, the court held that the pledgee, to be entitled under Article 3158 to retroactive ranking to the date of the initial loan for all subsequent advances to the pledgor, must prove that:
(1). The initial pledge was properly confected;
(2). The parties mutually agreed at the time of the original pledge that the pledge would also secure obligations thereafter arising;
(3). Each subsequent loan was especially secured by the pledge of the original collateral mortgage note;
(4). The pledged collateral has continuously remained in the hands of the pledgee; and
(5). The parties acted in good faith.
The court went on to state:
"The retroactive effect created by this statute may, by mutual consent, be made applicable not only to renewal of the primary loan but to new or additional loans, even though the original obligation has been fully paid. Further, such renewals, subsequent loans, additional advances, or other obligations shall be secured by the collateral pledged to the same extent as if made at the time the initial loan and pledge was executed." 261 So.2d at 255.
Because there is no proof in this record regarding the initial contract of pledge, we do not reach the question whether loans made to Bozorg by TBB after January 4, 1980 might have been secured with the August 12, 1975 ranking (or even whether an assignee can ever avail himself under La.C.C. Art. 3158 of retroactive ranking for later loans). TBB is simply not entitled to retroactive ranking because it made no showing that FMB itself would have been entitled to retroactive ranking for later-arising loans under Article 3158. The article does not purport to give retroactive ranking in every case of a loan secured by a pledge, but only when the initial contract of pledge establishes "a pledge ... made to secure a particular loan... and ... any other obligations of the pledger to the pledgee ... thereafter arising, up to the limit of the pledge". The proof in this record only establishes the parties' intention to pledge the collateral mortgage note to secure the "particular loan" (the initial $200,000 loan).
Privileges (including those arising from pledges) must be strictly construed. A privilege can be claimed only for those debts to which it is expressly granted. La.C.C. Art. 3185. The express grant of a privilege by Article 3158 exists only when the parties, at the time the contract of pledge is made, mutually agreed that the pledge would secure other unspecified obligations thereafter arising (in addition to securing the particular loan). In effect, the amended Article 3158 provides an exception to the general rule that the privilege only ranks from the time the principal obligation arises, the exception being when the pledgor and pledgee agree at the time of the initial pledge that the pledge will also secure obligations of the pledgor to the pledgee thereafter arising.
Therefore, for TBB to establish entitlement to retroactive ranking, it was necessary to prove that FMB and Bozorg mutually agreed in the 1975 contract of pledge that the pledge would also secure the pledgor's subsequently arising obligations *675 for which the original collateral mortgage note could be additionally pledged.[10] The 1975 contract of pledge is not in the record, and there is no other evidence of an agreement at the time of the initial pledge that the pledge would secure obligations thereafter arising. Therefore, TBB did not prove its compliance with the requirements of Article 3158 for retroactive ranking.
Accordingly, the judgment of the court of appeal is reversed in part, and it is ordered that the mortgage of Texas Bank of Beaumont be recognized as superior to the mortgage of Massey Ferguson, Inc., but only up to the amount of $88,025.34 plus accrued interest. Costs are to be assessed one-half to each of the two creditors.
DIXON, C.J., and DENNIS, J., concur.
MARCUS and BLANCHE, JJ., dissent and assign reasons.
MARCUS, Justice (dissenting).
I agree with the court of appeal that FMB assigned the "whole collateral file, which included the hand note," to TBB. The hand note was not paid off but rather was validly assigned to TBB along with the collateral mortgage and note. Further, considering the fact that Bozorg pledged a collateral mortgage note as security for the original debt and the language in the collateral mortgage note that "any and every other debt or obligation, direct or contingent, whether now existing or hereafter arising ... shall be secured," I am satisfied that it met the requirement in La.Civ.Code art. 3158 that "if so desired or provided, to secure any other obligations or liabilities of the pledger to the pledgee, then existing or thereafter arising, up to the limit of the pledge...." Accordingly, I consider that TBB is entitled to retroactive ranking in respect to the $200,000 hand note of February 7, 1980 from August 12, 1975.
I respectfully dissent.
BLANCHE, Justice (dissenting).
The majority finds that the transfer of the collateral mortgage package in January of 1980 was a payment (or purchase) with subrogation, the effect of which was to preserve the 1975 collateral mortgage ranking as to Bozorg's then existing principal obligation. They also hold that plaintiff failed to establish that the parties agreed in the 1975 contract of pledge that the pledge was intended to secure other of Bozorg's obligations which arose after the date of the 1975 contract of pledge.
From these holdings, I respectfully dissent. The act transferring the collateral mortgage from FMB to TBB clearly states that it is an act of assignment. As an act of assignment, all of the rights and privileges accorded the mortgagee to have future advances secured by the mortgage would have passed to the assignee. Likewise, the collateral mortgage states that it was created for the purpose of raising funds which indicates the collateral mortgage did contemplate securing future advances. As an assignment, it was not necessary that FMB own the collateral mortgage note as it was only assigning whatever rights it had as to that note under the pledge. Therefore, I believe that the Court of Appeal was correct in finding that all of the rights in this collateral mortgage, including the right to make future advances, were validly assigned to TBB and I would hold that the collateral mortgage held by TBB is superior to the mortgage held by MFI for the entire amount of the $200,000 hand note.
NOTES
[1] FMB was not a party to the instrument and apparently did not agree to subordinate any of its rights under the pledge of the 1975 collateral mortgage.
[2] TBB also sought to enforce a $35,000 collateral mortgage acquired from First National Bank of Jefferson (FNJ) on March 21, 1980. On January 12, 1978, Bozorg and his wife had executed a hand note, representing indebtedness of $35,000, and had pledged to FNJ a $35,000 collateral mortgage note to secure the hand note. On March 21, 1980, FNJ transferred the entire collateral mortgage package, including the hand note, to TBB for $33,911.01 (the amount then due, including principal and interest). On that same day, the Bozorgs executed a new hand note to TBB for $35,000, pledging the January 12, 1978 collateral mortgage and note. The trial court, ranking this mortgage from the date of the new hand note and repledge of the collateral mortgage note to TBB, held that MFI's mortgage was superior. However, the appellate court reversed, and MFI did not seek review of that portion of the appellate court's judgment, which is now definitive on that issue. Therefore, TBB's superior ranking as to the mortgage acquired from FNJ is no longer at issue in this ranking contest.
[3] The collateral mortgage has long been recognized by the courts. See, for example, Levy v. Ford, 41 La.Ann. 873, 6 So. 671 (1880).
[4] Pledge is an accessory contract which secures the performance of an existing principal obligation. La.C.C. Art. 3136. The principal obligation in the collateral mortgage scheme is the actual indebtedness, usually represented by a hand note, and the collateral mortgage note is pledged to secure payment of the principal obligation.
[5] La.C.C. Art. 2645 provides that "[t]he sale or transfer of a credit includes every thing which is an accessory to the same; as suretyship, privileges, and mortgages". Therefore, when a creditor assigns a note, the assignee receives the note and all accessory contracts. In the case of the ordinary conventional mortgage in which the debt is evidenced by a note secured by the mortgage, assignment of the note includes the mortgage in the transfer, because the mortgage is an accessory. However, in the case of a collateral mortgage, the debt is evidenced by the hand note, and it is the collateral mortgage note (and its accompanying mortgage) which is the pledged security. Thus, upon transfer of the hand note evidencing the principal obligation, the auxiliary contracts, i.e., the collateral mortgage note and mortgage, are transferred as well, because they are accessories to the hand note.
[6] La.C.C. Art. 2160(1) provides:

"The subrogation is conventional:
"(1) When the creditor, receiving his payment from a third person, subrogates him in his rights, actions, privileges, and mortgages against the debtor; this subrogation must be expressed and made at the same time as the payment."
[7] La.C.C. Art. 2195 provides:

"The privileges and mortgages of the former credit are not transferred to that which is substituted to it, unless the creditor has expressly reserved them."
[8] The court of appeal thus had no record support for its statement that the hand note previously held by FMB was a bearer instrument. Admittedly, the hand note evidencing Bozorg's debt to FNJ was a bearer note and was proved to be part of FNJ's assignment to TBB, but MFI does not contest TBB's superior ranking on that debt.
[9] The bank officer testified as follows:

"Q. What did you deliver to Texas Bank of Beaumont when you executed that assignment?
"A. I delivered a collateral mortgage and, as far as I recollect, I cannot find my collateral file at the bank since I talked to you on the phone last week and, I presume I must have given him my whole collateral file because usually we keep them in our vault after they are paid out. I couldn't find any recollection.... But, I know I delivered the collateral mortgage note to them.
"Q. Were there any other notes delivered?
"A. I don't recall.
"Q. Do you know what happened to the, what is called the `hand note'?
"A. No. As I was listening to Miller [FNJ officer] give his testimony I was trying to recall what happened to our hand note. I don't recall if we ... if I brought that the same day or that was mailed. I don't recall.
"Q. Do you know whether or not it was returned to Kazem Bozorg?
"A. Honestly, I don't know.
"Q. Do you know if it was marked `paid'?
"A. Really, I couldn't say yes or no."
[10] We emphasize that the agreement must be in the contract of pledge and not in the collateral mortgage instrument. Indeed, the pledgee is generally not a party to the collateral mortgage instrument, and the instrument is frequently executed prior to a contract of pledge.