563 So.2d 1265 (1990)
CITIZENS NATIONAL BANK
v.
Warren COATES and Mary Jean Coates.
No. CA 89 1015.
Court of Appeal of Louisiana, First Circuit.
June 26, 1990.
T. Jay Seale, Hammond, for appellant, Citizens Nat. Bank.
J. Peyton Parker, Jr., Baton Rouge, for appellees, Warren and Mary Jean Coates.
Before LOTTINGER, CRAIN and LEBLANC, JJ.
CRAIN, Judge.
The question in this case is whether a "gorilla clause" in a pledge agreement supercedes *1266 the subsequent intent of the pledgor not to have the pledge secure a handnote. The party who executed the handnote no longer owned the property originally pledged when the note in question was signed. He signed the note in blank with no identification with the pledge. He claims there was no intent to secure this particular handnote by the pledge. The handnote was identified with the pledge by a bank officer noting the pledge on the note subsequent to its execution by the maker, without the maker's knowledge. The bank officer knew the maker of the handnote no longer owned the property pledged.
The trial court made all of the above findings of fact, which our review of the record reveals not to be manifestly erroneous. Consequently, if the "gorilla clause" in the pledge agreement does not supercede the subsequent intent of the parties the judgment of the trial court is correct.
The "gorilla clause" in the pledge provides "it shall be conclusively presumed that any and all loans and advances hereafter made to the undersigned by said Banks shall have been made in accordance with and upon the security provided for in this agreement...." A lender wanting to secure future advances by a collateral mortgage and obtain retroactive ranking to the original date of issue, must meet requirements spelled out in New Orleans Silversmiths, Inc. v. Toups, 261 So.2d 252, 254 (La.App. 4th Cir.) writ refused, 262 La. 309, 263 So.2d 47 (1972) as follows:
(a) The initial pledge was properly confected;
(b) Each succeeding loan was specifically secured by a pledge of the instrument;
(c) The parties had mutually agreed at the time of the original pledge that it would also secure any obligations or liabilities of the pledgor then existing or thereafter arising to the limit of the pledge; and,
(d) all of the foregoing being subject to the pledged instrument continuously remaining in the hands of the pledgee; and the parties at all times acted in good faith.
The "gorilla clause" is designed to meet requirement (c) not requirement number (b). Consequently, even with the "gorilla clause" subsequent loans must be specifically secured by the pledge. Under appellant's interpretation once the pledge of the initial collateral mortgage note is made with the "gorilla clause" the parties are unable to make subsequent loans without those loans being subject to the pledge, absent specific agreement to the contrary. Thus, the second requirement of Silversmiths would have no meaning.
Since there is a negative answer to our original question the findings of the trial court with reference to intent are relevant. Consequently, we adopt the well-reasoned conclusions of the trial court on those issues and attach hereto those reasons as appendix number one. All costs are to be paid by appellant.
AFFIRMED.[1]

APPENDIX

Twenty-First Judicial District Court

Parish of Livingston

State of Louisiana

Suit Number 45,928

Division "F"

Citizens National Bank

Versus

Warren L. Coates and Mary Jean Russell Coates

WRITTEN REASONS FOR JUDGMENT
Plaintiff bank, Citizens National Bank (hereinafter identified as "Citizens") seeks *1267 to obtain a judgment against defendant, Mary Jean Russell Coates on a promissory note and recognition of a collateral mortgage in the amount of $40,000.00 plus interest and attorneys' fees. Previously, this matter had been presented to the court (another judge) on a motion for summary judgment which was granted in favor of Citizens. However, on appeal the decision of the trial court was reversed and remanded based on the belief that the defendant had raised genuine issues of material fact sufficient to defeat the motion for summary judgment.[1] With the exception of one material fact, the evidence and the facts necessary for a decision are not in dispute.
On August 8, 1979, Warren L. Coates and his wife, Mary Jean Russell Coates, executed a collateral mortgage and collateral mortgage note in the amount of $40,000.00. In the Act of Collateral Mortgage, Warren L. Coates and Mary Jean Russell Coates specifically mortgaged and hypothecated unto and in favor of the mortgagee or any future holders, 30 acres of land located in Livingston Parish. The next day, being August 9, 1978, Warren L. Coates only pledged the Collateral Mortgage Note previously described to Citizens. The Collateral Pledge Agreement No. 50353 contained the following language:
The securities described herein shall be held by Citizens National Bank of Hammond as general collateral to secure any and all indebtedness due or to become due by the undersigned and it shall be conclusively presumed that any and all loans and advances hereafter made to the undersigned by said Bank shall have been made in accordance with and upon the security provided for in this agreement which shall remain in force and effect so long as the undersigned is indebted unto the Citizens National Bank of Hammond and it is expressly understood that the possession of the Citizens National Bank of Hammond of any security or property of the the undersigned of any character whatever shall conclusively evidence the fact that such security or property has been delivered in accordance with this agreement whether or not the same may be specifically described as contemplated herein. (emphasis added) (Exhibit D)
Thereafter on February 13, 1979, Warren L. Coates borrowed $32,000.00 from Citizens as evidenced by a promissory note in that amount executed by Warren L. Coates. This hand note was secured by the Collateral Pledge Agreement. This note was renewed on a number of occasions, the first being on August 27, 1979, and continuing up to September 10, 1982, when the principal balance of $18,680.19 was renewed together with the consolidation of other personal and business loans made to Warren L. Coates in the total amount of $119,969.26. The evidence further shows that previous to the execution of the September 10, 1982, and July 14, 1983, hand notes, Warren L. Coates and the defendant, Mary Jean Russell Coates, were legally separated on March 5, 1981, and as part of a community property settlement, Warren L. Coates conveyed to Mary Jean Russell Coates his one-half interest in the property pledged and Citizens' mortgage was recognized although Citizens was not a party to said agreement. This settlement was duly recorded in the public records on May 24, 1982. The evidence shows that Citizens was well aware of the settlement agreement but did not execute any document where it agreed to subordinate its position with regard to the mortgaged property to the position of Mary Jean Russell Coates.
It is the contention of the plaintiff bank that the language of the pledge agreement executed on August 9, 1978, effected a conclusive presumption that any loans made after August 9, 1978 to Warren L. Coates were being made in accordance with and upon the security provided for in the agreement and that the purpose of the *1268 standard pledge clause was to cross collateralize all of the borrower's loans. The defendant on the other hand asserts that there was no intent on Coates' part to include his other personal and business loans renewed on September 10, 1982, under the pledge agreement and that the bank was well aware that he did not own an interest in the property subject to the collateral mortgage at the time of the execution of the note on that date. Consequently, she argues that the bank was in bad faith and only the balance due on the original August 9, 1978 loan ($18,680.19) should be subject to the collateral mortgage. In New Orleans Silversmiths, Inc. v. Toups, 261 So.2d 252 (La.App. 4th Cir. 1972) stated:
It is well established by jurisprudence that mortgages for the purpose of creating collateral to be used as security for the payment of debts or obligations not yet in existence but to be made in the future are sanctioned under LSA-C.C. arts. 3292 and 3293. This type of obligation is a contingent encumbrance which departs from the accessory concept of the ordinary conventional mortgage requiring a primary or principal debt. LSA-C.C. arts. 3285 and 3411(4); Thrift Funds Canal, Inc. v. Foy, La., 260 So.2d 628 (1972).
The court in Silversmiths, supra, then went on to hold that:
... the pledgee, to be entitled under Article 3158 to retroactive ranking to the date of the initial loan for all subsequent advances to the pledgor, must prove that:
(1). The initial pledge was properly confected;
(2). The parties mutually agreed at the time of the original pledge that the pledge would also secure obligations thereafter arising;
(3). Each subsequent loan was especially secured by the pledge of the original collateral mortgage note;
(4). The pledged collateral has continuously remained in the hands of the pledgee;
(5). The parties acted in good faith.
The court went on to state:
"The retroactive effect created by this statute may, by mutual consent, be made applicable not only to renewal of the primary loan but to new or additional loans, even though the original obligation has been fully paid. Further, such renewals, subsequent loans, additional advances, or other obligations shall be secured by the collateral pledged to the same extent as if made at the time the initial loan and pledge was executed." 261 So.2d at 255. (emphasis added by court)
See Texas Bank of Beaumont v. Bozorg, 457 So.2d 667 (La.1984) where Silversmiths is quoted with approval.
While some authorities believe that the law may require that both spouses sign the subsequent pledge agreement where one is prepared,[2] the court believes that Ms. Coates' signature was not indispensable and, for purposes of its decision, the pledge was not only properly confected, but expressly provided that it would secure obligations arising thereafter and accordingly, the first two requirements of Silversmiths, supra, were satisfied. Further, one of the other requirements of Silversmiths, supra, i.e., the pledged collateral has continuously remained in the hands of the pledgee has also been met.
Questions arise however, whether the third and fifth requirements of Silversmiths have been indeed met. These are that each subsequent loan was especially secured by the pledge of the original collateral mortgage note and the parties acted in good faith. More particularly, the issue is whether the inclusion of other personal and business loans of Warren L. Coates in the renewal note of September 10, 1982, and the basis of Citizens' demand, was to be especially secured by the pledge of the *1269 original collateral mortgage note, and if so, whether the bank acted in good faith.
With respect to the issues presented, there is a thorough treatment in the 49 La. Law Review 39 in an article entitled "The Collateral Mortgage: Logic and Experience". The authors observe: "... one of the five tests of New Orleans Silversmiths that must be met for the lender to obtain retroactive ranking is that the parties mutually agree at the outset that the mortgage will be used for future advances. But another Silversmiths test is that each of the succeeding loans be specifically secured by the pledge of the ne varietur note". (page 63). Further they note: "... While no written "repledge" agreement is necessary, some manifestation of a specific intent to secure each subsequent advance by the mortgage is required both by New Orleans Silversmiths and by the plain language of article 3158." (page 64) Finally, the authors conclude: "... The "good faith" requirement in article 3158, commonly referred to as the fifth Silversmiths requirement, clearly overides all four of the preceding technical requirements...." (page 69)
Now turning to the specific facts of the case, we find that Warren L. Coates testified in his deposition:
... I emphasized to him (Phil Livingston, president of "Citizens") that I did not want any additional money applied toward this $18,680.19 balance. I did no longer own the property, therefore, I didn't feel that I had any right to mortgage it for more than the present balance. Mr. Livingston assured me that that was no problem. (page 15, line 13; page 16, line 1 of deposition)
Livingston testified that he was aware that Coates no longer had a one-half interest in the property, but checked with the bank's attorney before the pledge stamp was placed on the note the next day. Livingston never directly refuted the statements made by Coates that the collateral mortgage note was not to be used as security for Warren L. Coates' other personal and business loans over and above the principal balance for the 1979 loan. The court concludes that not only was mutual consent of the parties lacking in that Warren L. Coates never agreed that his other personal and business loans were to be repledged in the hand note of September 10, 1982, but the bank was not in "good faith" in affixing the stamp the next day signifying that the hand note was pledged by the collateral mortgage note. Accordingly, the court determines that the pledge is viable only to the extent of the principal balance of $18,680.19. Since Warren L. Coates has taken bankruptcy and this proceeding is stayed as to him, plaintiff is entitled to judgment against Mary Jean Russell Coates in the amount of $18,680.19, together with interest and attorneys' fees and recognition of its collateral mortgage against the property described to the extent of $18,680.19.
The defendant has filed a reconventional demand against Citizens for damages allegedly sustained as a result of the suit and foreclosure. No proof is in the records supporting this claim and therefore, the reconventional demand is dismissed.
A formal judgment will be signed consistent with the written reasons stated herein.
Thus done and signed this 13 day of December, 1988, at Baton Rouge, Louisiana.
 /s/ Lewis S. Doherty III
 Lewis S. Doherty III
 Judge Ad Hoc
 21st Judicial District Court
NOTES
[1] Two judgments were signed in this matter. The first provided for payment by Mary Jean Coates of $18,680.10 to Citizens as the balance due on the original collateral note and mortgage, subject to credit for all payments made by her since the purchase of the property in 1986. This judgment was appealed before the second was signed. Consequently, this judgment is the one affirmed.
[1] 509 So.2d 103 (La.App. 1st Cir.1987).
[2] 49 La. Law Review 39, 52.