| iTHOMAS F. DALEY, Judge Pro Tem.
This appeal arises from a controversy between the pledgee of a collateral mortgage, Jefferson Guaranty Bank (JGB), and the holder of a judicial mortgage, Zurich American Insurance Company (Zurich). At issue is whether subsequent advances by JGB are entitled to retroactive ranking under LSA-C.C. art. 3158 thereby priming Zurich’s judicial mortgage which was recorded during the interim between the initial issuance of the collateral mortgage and some subsequent advances. The trial court found that all the advances were secured by JGB’s collateral mortgage and from that judgment Zurich appeals. We affirm.

*1080
FACTS AND PROCEDURAL HISTORY

On June 8, 1987, Dickens and Mariell Lagos executed in favor of JGB a collateral mortgage and a collateral mortgage note in the amount of $100,000 bearing 18% interest from date and 25% attorney’s fees. They contemporaneously executed a collateral pledge agreement # 27942 wherein they pledged the $100,000 collateral mortgage note along with two other collateral mortgage notes to JGB to secure “the payment of all such indebtedness ... whether presently existing on hereafter incurred ...” The collateral pledge agreement further provided: “The securities described herein shall be held by Jefferson Guaranty Bank, as Rgeneral collateral to secure any and all indebtedness due or to become due by the undersigned.” The Lagoses also contemporaneously executed a $75,000 hand note which referenced the collateral pledge agreement and the following day the mortgage was recorded.
On December 19, 1987, Zurich obtained a judgment in the amount of $235,516.88 plus judicial interest and costs against Dickens Lagos and the judgment was recorded on September 15, 1988.
On June 18, 1989, Dickens Lagos executed a promissory note in the amount of $37,500 payable to JGB. The note was secured by an assignment of deposit account.
On May 17, 1990, Dickens and Mariell Lagos executed a promissory note in the amount of $80,141.46 payable to JGB. This note was a consolidation of the balance due on the $75,000.00 promissory note dated June 7, 1987 and the balance due on the $37,500 promissory note dated June 16, 1989. This note was secured by the $100,000 collateral mortgage note dated June 8, 1987 and a certificate of deposit.
On July 13, 1990, Dickens and Mariell Lagos executed as guarantors a promissory note in the amount of $60,000 payable to JGB and the note was secured by the Collateral Pledge Agreement # 24965 dated November 1, 1986.
On June 7, 1991, Dickens and Mariell Lagos executed in favor of JGB a collateral mortgage and a collateral mortgage note in the amount of $30,000 bearing 18% interest from date and 25% attorney’s fees. They also executed a promissory note in the amount of $126,489.12 payable JGB. This note consisted of a renewal of the May 17, 1990 promissory note and additional funding to pay the $60,000 promissory note dated July 13, 1990. This note was secured by the Collateral Pledge Agreement #27942.
On October 29, 1993, JGB filed a petition for executory process alleging that the $126,-489.12 promissory note of June 7,1991 was in default and seeking to enforce the $100,000 collateral mortgage dated June 8, 1987 by having the mortgaged property seized and sold. Zurich subsequently intervened alleging that its judicial mortgage primes in rank the advances made by JGB Igsubsequent to the recordation of its judicial mortgage. Following the sale of the property, the proceeds were deposited into the registry of the court. In rendering judgment in favor of JGB, the trial court found that all five requirements of art. 3158 as set forth in New Orleans Silversmiths, Inc., v. Toups, 261 So.2d 252 (La.App. 4th Cir.1972), writ denied, 262 La. 309, 263 So.2d 47 (1972), had been satisfied. Zurich contends that the trial court erred in so finding.

DISCUSSION

LSA-C.C. art. 3158 “was designed to permit the mortgagor to pledge a collateral mortgage note to secure a particular debt, either previously existing or contracted contemporaneously with the pledge, and to secure future loans by the pledgee to the pled-gor (up to the limits of the pledge). The pledge privilege has been held to be effective against third persons as to future loans (for which the collateral mortgage note is subsequently repledged) from the date of the initial contract of pledge, as long as the parties mutually agreed in the initial contract of pledge that the pledge was to secure obligations thereafter arising and the pledges were made in good faith.” Texas Bank of Beaumont v. Bozorg, 457 So.2d 667, 672 (La.1984).
In New Orleans Silversmiths, Inc v. Toups, supra, the Court held that to be entitled under art. 3158 to the retroactive ranking to the date of the initial loan for all *1081 subsequent advances to the pledgor, the pledgee must prove that:
(1) The initial pledge was properly con-fected;
(2) Each succeeding loan was specifically secured by the pledge of the original collateral mortgage note;
(3) The parties mutually agreed at the time of the original pledge that the pledge would also secure obligations thereafter arising;
(4) The pledged collateral has continuously remained in the hands of the pledgee; and
(5) The parties acted in good faith.
In the instant case the pledge of the $100,-000 collateral mortgage note was properly confected and the pledge expressly Uprovided that it would secure obligations arising thereafter. Additionally, the $100,-000 collateral mortgage note has continuously remained in the hands of JGB. Therefore, the first, third and fourth requirements of Silversmiths have been met.
Regarding the second requirement, the following has been written in Nathan and Dunbar, The Collateral Mortgage: Logic and Experience, 49 La.L.Rev. 89, 64 (1988):
While no written “repledge” agreement is necessary, some manifestation of a specific intent to secure each subsequent advance by the mortgage is required both by New Orleans Silversmiths and by the plain language of article 3158. What is a sufficient manifestation? A ratification of the original pledge would silence all critics ... [Footnote omitted.]
The note in default was the $126,489.12 promissory note dated June 7, 1991. Although the indebtedness represented by that note consisted of some advances which failed to indicate that they were secured by the pledge of the $100,000 collateral mortgage note, the $126,489.12 note stated that it was secured by the collateral pledge agreement # 27942. We find that such a reference satisfies the second requirement of Silversmiths, supra.
LSA-C.C. art. 3158 allows a secured collateral mortgage holder to advance sums secured by that collateral mortgage after the recording of a subsequent security device, similar to the judicial mortgage in this case. New money can be advanced, old debts consolidated, and new debts incurred, and these can be secured by the collateral mortgage as long as there is a manifestation of a specific intent to secure the advance by the collateral mortgage. In the instant case the debt utilized for the foreclosure was the $126,489.12 hand note which was secured by the pledge of $100,000 collateral mortgage note. The hand note, although it was perfected after the judicial mortgage of Zurich was recorded, reverts back to the recordation of the $100,000 collateral mortgage because the $126,489.12 hand note referred back to the original pledge agreement.
Having found that elements one through four of the Silversmiths criteria have been met, the Court must then turn to the fifth requirement of good faith. Zurich suggests preferential ^dealings between Dickens Lagos and JGB. There is no question that JGB enhanced its collateral position when it consolidated certain loans with the $126,489.12 hand note which was secured by the $100,000 collateral mortgage. There was no evidence presented, however, that JGB conducted these transactions for the purpose of defrauding Zurich. Surprisingly had Zurich sought to enforce its judicial mortgage when obtained, Zurich would have been in a better position with regard to equity sharing in the foreclosure sale. Zurich chose not to exercise its security rights promptly and cannot now claim that JGB’s subsequent advances tied to a valid collateral mortgage is evidence of bad faith. The trial court found that the parties acted in good faith and this court can find no basis to overturn that finding.
Having affirmed the judgment in favor of JGB, we need not address the issue of the granting of the homestead exemption to the Lagoses considering that they waived that exemption in the collateral mortgage.
Accordingly, the judgment of the trial court is affirmed.

AFFIRMED.