705 So.2d 813 (1998)
Mr. & Mrs. Philip J. SCIORTINO
v.
BANK OF LOUISIANA and Herb Hecker.
No. 97-CA-1420.
Court of Appeal of Louisiana, Fourth Circuit.
January 28, 1998.
Rehearing Denied February 27, 1998.
*814 Joseph S. Russo, Jefferson, for Plaintiffs-Appellant Mr. & Mrs. Philip J. Sciortino.
Henry L. Klein, New Orleans, for Defendants-Appellees Bank of Louisiana and Herb Hecker.
Before LOBRANO, WALTZER and LANDRIEU, JJ.
WALTZER, Judge.
Plaintiffs seek to recover, in tort, damages from defendant, their lender, who refused to "release" a collateral mortgage securing both a loan made contemporaneously with the security agreement and a subsequent letter of credit.

STATEMENT OF FACTS
Mr. and Mrs. Philip Sciortino (the Sciortinos) applied for a $35,000.00 loan from the Bank of Louisiana (BOL) on 16 November 1990, signed a note for $50,000.00, plus interest on 14 December 1990, secured this note with a mortgage on their home, and pledged the note to secure the loan and "any future indebtedness" with BOL. Both Mr. Sciortino and Mrs. Sciortino signed the note, the security agreement (the pledge), and the collateral mortgage. The security agreement provided, in pertinent part:
Grant of security interest: I am granting you a continuing security interest in my Collateral as defined above to secure payment and satisfaction of my (and/or Borrower's) indebtedness until all of my (and/or Borrower's) indebtedness is fully paid and satisfied and you release me from this Agreement under a written cancellation.
The agreement defines indebtedness to mean:
any and all present and future loans, loan advances, other extensions of credit and/or financial accommodations that I (and/or Borrower) may obtain from you, as well as your successors and assigns, from time to time, one or more times, now or in the future, and any and all promissory notes or other instruments or agreements evidencing such present and future loans, loan advances, other extensions of credit and/or financial accommodations, as well as any and all obligations and liabilities of every nature and kind whatsoever, that I (and/or Borrower) may now and/or in the future *815 owe to and/or incur in favor of you, as well as in favor of your successors and assigns, whether director § sic$ or indirect, or by way of assignment of purchase of a participation interest, and whether absolute or contingent, liquidated or unliquidated, due or to become due, and whether now existing or hereafter arising, or otherwise secured or unsecured, in principal, interest, late charges, NSF check charges, costs, expenses, and attorney's fees, whether I (and/or Borrower) am obligated alone, or with others on a joint, several or solidary basis, as a principal obligor or as a surety.
Furthermore, the security agreement provides:
Delivery of Collateral: I have delivered the above described Collateral to you, which along with all other Collateral subject to this Agreement is to remain subject to your security interest and in your possession until such time as all of my (and/or Borrower's) indebtedness is fully paid and satisfied, in principal, interest, late charges, NSF check charges, other costs, expenses and attorney's fees, and you release me from this Agreement under a written cancellation ...
The collateral described in the security agreement includes the, "Collateral note in the amount of $50,000.00 on property located at 7530 Sardonyx St. New Orleans, La." The collateral mortgage secures the $50,000.00 Note and encumbers the Sciortinos' home, located at 7530 Sardonyx. BOL's records identify the 1990 loan with the number XXXXXXXXXX. Neither the Sciortinos nor BOL dispute the confection of a valid collateral mortgage in 1990.
In August 1992, Mr. Sciortino sought additional credit from BOL. Specifically, Mr. Sciortino requested a letter of credit in the amount of $5,000.00. When Mr. Sciortino approached BOL about the letter of credit for the couple's business, the lender issued the necessary letter of credit and extended the Sciortinos' obligation to the bank. BOL renewed the letter of credit in September 1993. The 1992 and 1993 applications for the letter of credit described the security for this transaction; "Cross pledge of collateral mortgages held to secure consumer loan A/N XXXXXXXXXX." In connection with BOL's issuance of this letter of credit, Mr. Sciortino signed a blank promissory note in the amount of $5,000.00, in favor of BOL, and BOL (surety) and Mr. Sciortino (principal) signed a Financial Surety Bond. BOL debited the Sciortinos' checking account $200.00 in July 1993, for renewal of the letter of credit. Neither the Sciortinos nor BOL dispute that the letter of credit issued by BOL for the benefit of Mr. Sciortino continued in existence when the dispute arose.
In 1994, Mr. Sciortino attempted to refinance the loans and other encumbrances on the Sardonyx property with a new lender, Greater New Orleans Homestead (GNO). GNO ordered Advocate Title Corporation (Advocate) to investigate the title of 7530 Sardonyx. Advocate's representative, Elizabeth Mentass, ordered "payoff statements" on the first and second mortgages. BOL held the second mortgage (#XXXXXXXXXX). On 15 July 1994, Herb Hecker, the loan officer for BOL responsible for the Sciortino's financial arrangements, informed Advocate's representative, "he was not able to release the second mortgage because it was cross pledged between Mr. and Mrs. Sciortino and their business and a third party." Thus, GNO decided, at least in part, not to refinance the Sardonyx property because BOL could not release the mortgage.

STATEMENT OF THE CASE
On 30 June 1995, the Sciortinos filed a Petition for Damages alleging BOL through its employee, Herb Hecker, wrongfully "refused to provide them a payout figure of all amounts due...." On 13 February 1997, the suit came for trial, and the parties submitted the matter for decision on the basis of the parties' exhibits. The parties stipulated to the authenticity of the exhibits and to the testimony of two witnesses, Herb Hecker and Elizabeth Mentass. On 4 April 1997, the trial court rendered a judgment for defendants, BOL and Herb Hecker, dismissing the plaintiffs' case. Furthermore, the court issued Reasons for Judgment and stated; "Under the circumstances defendant was justified in not releasing the collateral mortgage without proper arrangement for collateral on all outstanding obligations of plaintiff." *816 Specifically, the court found that the letter of credit created a valid obligation of plaintiffs, that the collateral mortgage secured both the mortgage on the Sardonyx property and the letter of credit, and that BOL correctly refused to release the collateral mortgage until all outstanding obligations, including the letter of credit, of plaintiffs were satisfied. Plaintiffs noticed their intent to devolutively appeal on 11 April 1997.
ASSIGNMENT OF ERROR: The trial court erred in finding the Sciortinos agreed that the 1990 Collateral Mortgage secured the subsequent letter of credit.
Plaintiffs argue that the letter of credit was not secured by the 1990 collateral mortgage. In reviewing the factual findings of a trial court, an appellate court is limited to a determination of manifest error. Hill v. Morehouse Parish Police Jury, 95-1100 (La.1/16/96), 666 So.2d 612, 614; Ferrell v. Fireman's Fund Ins. Co., 94-1252 (La.2/20/95), 650 So.2d 742, 745; Stobart v. State through Dept. of Transp. and Dev., 617 So.2d 880 (La.1993); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). The trial judge found that the evidence presented did not support plaintiffs' claims. In 1990, the Sciortinos executed a valid collateral mortgage. This agreement explained repeatedly that it secured any future "financial accommodations" between BOL and the Sciortinos.
A collateral mortgage is a form of conventional mortgage which does not directly secure an existing debt, but is designed to create a mortgage note for a fictitious debt that can be pledged as collateral security for a real debt. Texas Bank of Beaumont v. Bozorg, 457 So.2d 667, 671 (La.1984). The collateral mortgage combines the security devices of pledge and mortgage. Id. Parties by collateral mortgage may agree to pledge the note securing existing or future obligations of the parties up to the limits of the pledge. Id. Being contractual in nature and permitted by statute, the documents constituting the collateral mortgage, the note, the mortgage, and the pledge or security agreement, become the law governing the transactions between the parties. New Orleans Silversmiths, Inc., infra at 256.
Plaintiffs agreed to the collateral mortgage arrangement. Both Mr. Sciortino and Mrs. Sciortino signed the documents creating the collateral mortgage. Specifically, the couple signed the security agreement, the pledge. The pledge repeatedly explained that the agreement secured future obligations incurred by the Sciortinos in favor of BOL, up to the limits of the pledge ($50,000.00). The subsequent letter of credit was a valid obligation created by Mr. Sciortino in favor of BOL. The debts incurred by Mr. Sciortino alone were secured by the 1990 collateral mortgage. The language of the collateral mortgage includes debts incurred by either Mr. Sciortino or Mrs. Sciortino. Plaintiffs argue that the signatures of both Mr. Sciortino and Mrs. Sciortino were necessary to perfect a valid debt. The letters of credit were not encumbrances of the couple's community property. The letters of credit were obligations encompassed by the 1990 collateral mortgage which agreement encumbered the Sciortinos' home. During the marriage, either Mr. Sciortino or Mrs. Sciortino, acting alone, may incur a community obligation. LSA-C.C. art. 2360. The parties do not argue that the letter of credit exceeded the limits of the pledge. Plaintiffs neither argued nor presented any evidence from which the court could have concluded that the parties did not intend for the letter of credit to be secured by the 1990 collateral mortgage. Citizens Nat. Bank v. Coates, 563 So.2d 1265, 1269 (La.App. 1 Cir.); writ denied 568 So.2d 1058 (La.1990). Moreover, the loan applications regarding the letter of credit specifically state that the security for the obligation is the 1990 collateral mortgage. Furthermore, plaintiffs do not dispute the "financial accommodations", both the loan and the letter of credit.
Plaintiffs' arguments concerning the validity of and/or the necessity for a second pledge agreement to determine the rights and obligations of the original parties to the 1990 security agreement fail to persuade this court. Texas Bank of Beaumont, supra at 672; citing New Orleans Silversmiths, Inc. v. Toups, 261 So.2d 252, 256 (La.App. 4 Cir. 1972); writ refused 262 La. 309, 263 So.2d 47 (1972). Plaintiffs are the original parties to *817 the security agreement, and they seek to disavow the plain language of their agreement with BOL.
We are unable to conclude from the record that the trial court's findings were clearly erroneous.
AFFIRMED.