DENNIS R. BAGNERIS, SR., Judge.
I,This appeal arises out of a dispute over a siding installment contract. Brian C. Schmalz d/b/a Square Deal Siding Company (“Mr. Schmalz”) is the plaintiff and defendant in reconvention in the litigation. Mrs. Stephanie Thaller (“Mrs. Thaller”) is the defendant. Mr. Matthew Thaller (“Mr. Thaller”) and Mrs. Thaller, husband and wife, are the plaintiffs in reconvention. After a one day bench trial, the trial court found in favor of defendant, Mrs. Thaller, and dismissed Mr. Schmalz’s suit to enforce lien. The trial court also found in favor of plaintiffs in reconvention, Mr. and Mrs. Thaller, releasing all liens filed by Mr. Schmalz and ordered Mr. Schmalz to pay twenty-five thousand dollars ($25,-000.00) to Mr. and Mrs. Thaller. Mr. Schmalz appeals this final judgment. Mr. and Mrs. Thaller [¿answered the appeal alleging that the trial court failed to award attorney’s fees after finding that Mr. Schmalz filed an improper lien.
Mr. Schmalz raised the exception of no right of action for the first time on appeal. This exception challenges Mr. Thaller’s right to sue on the contract, or for its breach, due to the fact that the property is the separate property of his wife, the contract is a separate obligation, and damages for the breach of the contract, or for damages to the immovable, would thus be the separate property of Mrs. Thaller. Thereafter, Mr. and Mrs. Thaller filed a motion to strike the two documents (the donation inter vivos and act of sale) attached to the exception of no right of action arguing that the documents are not part of the trial court record and should be stricken from this Court record. The case was argued and submitted to this Court on both the exception of no right of action and the merits. For the following reasons, we grant the motion to strike, we deny the exception of no right of action, and in all other respects the judgment of the trial court is affirmed.
FACTS
On September 29, 2003, Mrs. Thaller (signing her maiden name, Stephanie San- *75 tistevan) and Mr. Schmalz signed a contract to replace the siding and gutters on the property located at 3221-23 Grand Route St. John in New Orleans, Louisiana, for a contract price of $12,040.00. Mr. Schmalz and Mrs. Thaller agreed that payment for the entire contract price was not due until completion of the entire project. The siding installation began shortly thereafter. Prior to the completion of the job, Mr. Thaller prepared a punch list of the items needing correction. On November 20, 2003, Fran Schmalz, the father and employee of Mr. Schmalz, contacted Mrs. Thaller advising that Mr. Schmalz was having financial difficulty and requested partial payment of the contract price prior | .¡to completion. Mrs. Thaller, on November 20, 2003, issued a $10,000.00 check to Square Deal Siding in partial payment, and both Mrs. Thaller and Fran Schmalz signed an agreement that, “This job is not finished-Square Deal promises to complete the job this week. I will pay balance of $2,040.00 when punch list is complete.” Mr. Schmalz deposited Mrs. Thaller’s $10,000.00 check on November 21, 2003, and on that same date, issued a ten-day lien letter threatening to file a lien on Mrs. Thaller’s property unless the unpaid balance of $2,040.00 was paid within ten days. According to Mrs. Thaller, Mr. Schmalz never returned to complete the job.
Mr. Schmalz recorded the lien affidavit in the Mortgage Office on January 21, 2004. On December 30, 2004, Mr. Schmalz filed suit against Mrs. Thaller to enforce the lien.[1] According to Mrs. Thaller, she first discovered that a lien was placed against the property when she and Mr. Thaller sought to refinance the property in 2005.
On April 19, 2007, Mrs. Thaller filed an answer to the petition. Thereafter, Mr. and Mrs. Thaller filed a reconventional demand asserting a claim that the siding was improperly installed, causing damage, and requiring removal and replacement of the siding and gutters, asserting damages for wrongfully placing the lien on the property and asserting a claim for attorney’s fees for maliciously and recklessly abusing the lien privilege.
Following a hearing on March 10, 2008, the trial court rendered judgment on the main demand in favor of Mrs. Thaller, dismissing the suit to enforce lien filed by Mr. Schmalz. The trial court also rendered judgment in favor of Mr. and Mrs. 14ThaIler on the reconventional demand, releasing the lien filed by Mr. Schmalz and ordering Mr. Schmalz to cancel the lien and cancel the inscription of lis pendens within ten days from judgment. The trial court also rendered judgment in favor of Mr. and Mrs. Thaller and against Mr. Schmalz in the amount of $25,000.00.
Mr. Schmalz filed an appeal from this judgment. Mr. and Mrs. Thaller filed an answer to the appeal alleging that the trial court judgment be modified to award additional damages and attorney’s fees due to Mr. Schmalz’s actions in improperly placing a lien on the property. Mr. Schmalz also filed, for the first time, an exception of no right of action. Attached to the exception of no right of action, Mr. Schmalz filed, for the first time, a copy of the donation inter vivos and the act of sale to reflect that although the subject property was acquired during Mr. and Mrs. Thal-ler’s marriage, Mr. Thaller donated his interest in the property to Mrs. Thaller in September of 2003.
*76 Thereafter, Mr. and Mrs. Thaller filed a motion to strike the two documents (the donation inter vivos and act of sale) attached to the exception of no right of action arguing that the documents are not part of the trial court record and should be stricken from the this Court record. We hereby grant the motion to strike as the documents attached to the exception of no right of action were not introduced in the trial court and are not in the trial court record.
ON THE EXCEPTION
The peremptory exception of no right of action derives from La. C.C.P. art. 927. The essential function of the peremptory exception of no right of action is to test whether the plaintiff has a real and actual interest in the suit. La. C.C.P. art. 927(A)(5). “Its purpose is to determine whether the plaintiff belongs to the class of persons to whom the law grants the cause of action asserted in the suit. It assumes |Bthat the petition states a valid cause of action and questions whether the plaintiff in the particular case has a legal interest in the subject matter of the litigation.” Wirthman-Tag Const. Co., L.L.C. v. Hotard, 00-2298, 00-2299, pp. 2-3 (La. App. 4 Cir. 12/19/01), 804 So.2d 856, 859 (emphasis omitted) (citing Louisiana Pad-dlewhells v. Louisiana Riverboat Gaming Com’n, 94-2015, pp. 5-6 (La.11/30/94), 646 So.2d 885, 888). A defendant may plead the exception of no right of action in any court prior to the submission of the case for decision if proof of the ground for the exception appears in the record. La. C.C.P. arts. 927 and 2163 (emphasis added).
Whether a plaintiff has a right of action is a question of law. Since this is an appeal from a bench trial, we have before us the record from the trial court. We will review the question of law de novo considering the record before us and the substantive law regarding Mr. Thaller’s right to bring this action. City of Neiv Orleans v. Board of Directors of Louisiana State Museum, 98-1170, pp. 9-10 (La.3/2/99), 739 So.2d 748, 756.
In support of the exception of no right of action, Mr. Schmalz argues that Mr. Thaller has no right to sue on the contract, or for its breach, since he donated his interest in the property to Mrs. Thaller in September of 2003, prior to the execution of the contract, the performance of the work, or the recordation of the lien. In opposition to the exception of no right of action, Mr. and Mrs. Thaller argue that even if Mr. Thaller quitclaimed his interest in the property to Mrs. Thaller, he never assigned his rights to any claims arising from the subject lawsuit.
An obligation incurred by a spouse during the existence of a community property regime for the common interest of the spouses or for the interest of the other spouse is a community obligation. La. C.C. art. 2360. During the marriage, | r,either spouse acting alone may incur a community obligation. Sciortino v. Bank of Louisiana, 97-1420, p. 6 (La.App. 4 Cir.1/28/98), 705 So.2d 813, 816. Except for separate obligations specified under La. C.C. art. 2363, “all obligations incurred by a spouse during the existence of a community property regime are presumed to be community obligations.” La. C.C. art. 2361. La. C.C. art. 2345 provides that “[a] separate or community obligation may be satisfied during the community property regime from community property and from the separate property of the spouse who incurred the obligation.” Further, La. C.C. art. 2364 provides that “[i]f community property has been used to satisfy a separate obligation of a spouse, the other spouse is entitled to reimbursement upon termination of the community property regime for one-half of the amount or value *77 that the property had at the time it was used.”
In this case, the record is unclear as to whether community funds were used to pay Mr. Schmalz the $10,000.00 for the work done on the contract. Further, it is unclear whether the obligation to improve the property, signed by Mrs. Thaller, was for the benefit of the community, the family, or Mr. Thaller. When a defendant pleads the exception of no right of action in the appellate court for the first time, proof of the ground for the exception must be in the record. In this case, we do not find proof in the record to support Mr. Schmalz’s exception of no right of action. Accordingly, we hereby deny the exception of no right of action.
ON THE MERITS
STANDARD OF REVIEW
An appellate court may not set aside a trial court’s finding of fact in the absence of manifest error or unless it is clearly wrong, and where there is conflict in the testimony, reasonable inferences of fact should not be disturbed upon |7review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). Further, where there are two permissible views of the evidence, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong. Id. (our emphasis). Thus, disagreements with the findings of the trial court, alone, are not grounds for substituting the appellate court’s judgment for that of the trier of fact.

Issue One: Whether the trial court erred when it denied Mr. Schmalz’s continuance.

On appeal, Mr. Schmalz contends that the trial court erred when it denied his motion for continuance because he [Mr. Schmalz] had insufficient time to prepare for his testimony and because discovery was incomplete. Mr. and Mrs. Thaller’s counter argument is that Mr. Schmalz never urged on the record the need for a continuance based on incomplete discovery; rather, the reason for the request for the continuance at trial was solely Mr. Schmalz’s inability to testify, which became moot once Mr. Schmalz appeared at trial and gave his testimony.
A trial court has “wide discretion” in deciding whether to grant or deny a motion for continuance. Hebert v. C.F. Bean Corp., 00-1029, p. 2 (La.App. 4 Cir. 04/25/01), 785 So.2d 1029, 1030. A review of the record reveals that the motion for the continuance was based on Mr. Schmalz’s inability to testify at trial. However, shortly after beginning the trial, Mr. Schmalz did appear and was able to give his testimony. Under these circumstances, we do not find that the trial court abused its “wide discretion” in denying the motion for continuance.

Issue Two: Whether the trial judge eired when she failed to qualify the witnesses as an expert, even if so tendered and qualified.

On appeal, Mr. Schmalz argues that the trial judge erred in handling the expert testimony. Although he cites no legal authority for this proposition, Mr. | sSchmalz argues the trial judge erred when she refused to consider any expert, either plaintiff or defendant, when tendered, which presented an insurmountable obstacle to the proper questioning of the experts.
Mr. and Mrs. Thaller’s counter argument is that the trial judge was aware of the witnesses’ expertise and that the trial judge listened to the expert testimony of each witness and afforded the testimony the weight it deserved. Mr. and Mrs. Thaller cite to Mercer v. Fruehauf Corp., *78 492 So.2d 588 (La.App. 3 Cir. 7/23/86) for the proposition that even though a trial judge refused to qualify an expert witness, it was harmless error because the witness was permitted to take the stand and testify. Specifically, the Third Circuit Court of Appeal held as follows:
We note that Mr. Eicher ultimately took the stand on behalf of the appellant and testified concerning the design and manufacture of Fruehaufs tank trailers. Mr. Eicher was asked for and gave his opinion several times during his direct examination. Therefore, we find that even if the trial judge had committed manifest error in refusing to qualify Mr. Eicher as an expert witness, the error would not have been prejudicial to the appellant and, hence, not reversible.
Mercer, 492 So.2d at 541.
There is no requirement that a party formally tender an expert witness or that a court formally declare that a witness is accepted as an expert. See Darbonne v. Wal Mart Stores, Inc., 00-551, p. 9 (La. App. 3 Cir. 11/2/00), 774 So.2d 1022, 1028. In this case, the trial judge heard the testimony of two expert witnesses, Eric Arrant (“Mr. Arrant”) and Mr. Sehmalz. Whether or not the trial judge specifically qualified Mr. Arrant or Mr. Sehmalz as experts in their respective fields is inconsequential as it is clear from the record that the trial judge allowed both Mr. Arrant and Mr. Sehmalz to testify in the field of them specialized knowledge, and the trial judge specifically stated that she would hear the expert testimony and 19afford the expert testimony the weight that it deserved. As the trial judge stated, regarding experts:
Judge Spears: Counsel what I’ve been doing as far as expert testimony awhile back is not qualifying anybody as experts. I will just rule on the objections if the [sic] come up. strategist [sic] one objection is to come up.
Mr. Favret: Okay. And then it will go to the weight, I’m assuming?
Judge Spears: Yes.
* * ⅜
Judge Spears: Let me make it clear as to what my ruling was as to experts. The way I rule in general as to experts so that you will know, I don’t qualify anybody as an expert even though they might have expert testimony to offer the court.
I rule on each individual objection, then afford the testimony of whatever weight. So I’m going to overrule that one. But I am not making any ruling on — none of your objections should be based on the fact that I didn’t qualify the witness as an expert.
* ⅜ *
Judge Spears: He can testify about the question that he just got and the question before that. I don’t know whether or not I’m going to allow him to testify about another question.
Maybe there will be questions about structural engineering damage. I don’t know what other questions are going to be posed to this witness and so I will rule on those if they come up.
None of the objections should be based on the fact that I didn’t qualify him as an expert.
|1(lThe trial judge clearly indicated that she would accept opinion testimony from these witnesses and afford the expert testimony the weight it deserved. Accordingly, we find no merit in this assignment of error.

Issue Three: Whether the trial court erred when it refused to qualify Mr. Arrant as an expert witness as a sales consultant for the installation of siding, but allowed him to give opinion testimony concerning the siding installed.

Mr. Sehmalz argues on appeal that the trial judge erred when she refused to *79 qualify Mr. Arrant as an expert witness as a sales consultant for the installation of siding, but allowed him to give opinion testimony concerning the siding installed in this case. We find no merit in this assignment of error.
The admission of evidence — expert or otherwise — is subject to the trial court’s discretion. New Orleans Firefighters Local 682 v. City of New Orleans, 07-1475, p. 11 (La.App. 4 Cir. 3/5/08), 980 So.2d 760, 767. Further, the trial court is vested with much discretion in determining which opinion testimony shall be received into evidence and whether it will be received as “lay” or “expert” testimony. Griffin v. Tenneco Oil Co., 625 So.2d 1090, 1094 (La.App. 4 Cir. 9/30/93). La. C.E. art. 401 states that “ ‘[rjelevant evidence’ means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.” La. C.E. art. 701 allows a lay witness to testify in the form of opinions or inferences where those opinions or inferences are: (1) rationally based on the perception of the witness, and (2) helpful to a clear understanding of his testimony or the determination of a fact in issue.
As stated in the second assignment of error, the trial judge allowed Mr. Arrant to testify in the field of his specialized knowledge, and the trial judge specifically stated that she would listen to the expert testimony and afford the h testimony the weight it deserved. Further, we find both elements of La. C.E. art. 701 to be present. First, Mr. Arrant’s testimony was rationally based on his perception where he had three years of experience as a siding sales consultant with LAS and was trained in installing siding and the various products that are used. Second, Mr. Arrant’s background as a siding sales consultant, as well as his training on the various products used and the different methods of installation are helpful in determining whether Mr. and Mrs. Thaller’s siding was properly installed. Accordingly, we find no merit in this assignment of error.

Issue Four: Whether the trial court erred when it refused to qualify Mr. Schmalz as an expert witness.

On appeal, Mr. Schmalz argues that the trial judge erred by finding that he could not be qualified as an expert to rebut the testimony of Mr. Arrant. Further, Mr. Schmalz argues that when he was asked to give testimony about the impact of hurricane winds on siding, and the manner in which siding is manufactured to minimize that effect, the trial judge refused to allow his testimony and required that it be proffered. We find no merit in this assignment of error.
Mr. Schmalz was called as a fact witness in plaintiffs case. Following the testimony of Mr. Arrant, Mr. Schmalz was called back to the stand to provide expert testimony. Upon requesting the trial judge to tender Mr. Schmalz as an expert in vinyl siding installation, the trial judge stated:
Judge Spears: But you decide whether or not you are going to call somebody as an expert witness from early on. You don’t mid-stream say, “Now that they have an expert, and that you let them testify as an expert, we have an expert who is the same witness who was here before.
That’s the problem that I’m having with it. But go ahead. I’m giving you some | platitude because I’d like to give you the opportunity to present your case,—
Thereafter, Mr. Schmalz was allowed to provide expert testimony concerning the installment of the siding. Although Mr. Schmalz argues that he was told to proffer *80 his testimony regarding the impact of the hurricane on the siding, the record indicates that he did provide his opinion on this issue. Specifically, the testimony is as follows:
Q. Do you have any expert opinion concerning the way in which the siding in these pictures was damages?
A. This looks like my house after the tree fell on me—
⅜ He H=
Mr. Favret: Your Honor, I’m going to object, because I don’t think this Witness has expertise to tell what this [sic] storm damage and what is otherwise.
I don’t think he has any more expertise than any of us sitting in this room about whether it’s storm damage or otherwise. But that’s my objection, Your Honor.
Judge Spears: Counsel, I’m going to let him — he said — his opinion is that it’s storm damage. I’m just going to let that answer stay, that he thinks it’s storm damage and I’m going to afford it whatever weight I think it deserves.
Therefore, we find that the trial judge acted within her discretion in allowing Mr. Schmalz’s to testify on rebuttal and in giving his expert testimony the weight it deserved.

Issue Five: Whether the trial court erred when it refused to allow Mr. David Cloyd to testify as an expert witness.

On appeal, Mr. Schmalz argues that Mr. David Cloyd (“Mr. Cloyd”) should have been allowed to testify as an expert witness despite the fact that he was not | ^listed as a witness in discovery responses. We find no merit in this assignment of error.
A reviewing court must defer to a trial judge’s reasonable decision on a question or matter properly within his/her discretion. Harwell v. Haspel-Kansas Investments Partnership, 598 So.2d 1284, 1287 (La.App. 4 Cir. 4/30/92) (citations omitted). In matters of discovery, such as whether a witness has been listed in a timely manner, decisions of the trial court should not be disturbed in the absence of an abuse of discretion. Id. (citations omitted)
In this case, not only was Mr. Cloyd not identified throughout discovery, but he sat in the courtroom through the entirety of Mrs. Thaller’s and Mrs. Julie Schmalz’s testimony before counsel for Mr. Schmalz identified him to the court for the first time as a potential witness. Under these facts, we find the trial judge acted within her discretion in refusing Mr. Cloyd’s testimony from the proceedings.

Issue Six: Whether the trial court erred in dismissing Mr. Schmalz’s suit to enforce lien filed against Mrs. Thaller.

On appeal, Mr. Schmalz alleges that the trial court erred when it concluded, as a matter of fact, that the evidence presented by Mr. Schmalz did not establish a prima facie case for the debt owed. Mr. Schmalz argues that although he proved the amount remaining as unpaid under the contract was $2,040.00, the issue before the court was whether the punch list items were done. We find no merit in this assignment of error.
The trial court, in its reasons for judgment, stated in pertinent part:
Plaintiff, Square Deal Siding Company, Inc., was unable to establish a prima facie case against defendant, Stephanie Thaller. Neither of Schmalz’s witnesses was able to provide credible, clear or consistent testimony regarding the debt. Owner, Brian Schmalz’s testimony was particularly inconsistent and repeatedly by [sic] non-responsive. He also 114failed *81 to answer direct questions directly, thereby damaging his case substantially.
Conversely, plaintiffs-in-reconvention presented credible testimony that the Court accepted. They successfully proved not only that the siding job in question was done improperly, but that the balance due was justifiably withheld and withheld in compliance with plaintiffs [Mrs. Thaller’s] agreement with Square Deal Siding Company. Most disturbingly, however, plaintiff[s]-in-re-convention proved that the lien placed on their property was a complete abuse of the lien privilege, filed maliciously and recklessly.
At trial, Mrs. Thaller and Mr. Schmalz testified that they entered into a contract to install new siding and gutters at 3221-23 Grand Route St. John for a contract price of $12,040.00. Mr. Schmalz and Mrs. Thaller testified that no money was due on the job until the job was complete. Mr. Schmalz testified that he began installing the siding and gutters towards the end of October or beginning of November, 2003. Mr. Schmalz introduced a punch list created by either he or his employees, listing various items that needed to be corrected. Mr. Thaller testified that the list introduced by Mr. Schmalz was not a final punch list but was a punch list of items that were noted by him approximately three-fourths of the way through the project and before Mr. Schmalz and his crew “pulled off’ of the job.
Mrs. Thaller testified that in the latter part of November 2003, Mr. Schmalz contacted her to inform her that the job was finished and that he wanted his check. In response to Mr. Schmalz’s request, Mrs. Thaller testified that she and Mr. Thaller inspected the work and noticed problems with the workmanship. Specifically, Mr. and Mrs. Thaller testified that Mr. Thaller prepared a punch list which included problems with the wires pulling away from the siding, unsealed window trim, uncaulked siding, soffit needing to be drawn down, scratches and dents on the gutter in the front right side of the house, and multiple seams reversed |lfiin multiple spots. Mr. and Mrs. Thaller testified that Mr. Thaller met Mr. Schmalz at the house and went through his punch list pointing out the multiple areas of workmanship and damage to the siding and gutters that needed to be addressed. According to the Thal-lers, Mr. Schmalz agreed to perform Mr. Thaller’s punch list items; however, Mrs. Thaller testified that Mr. Schmalz only completed the caulking and that the remainder of the items was never completed.
Mr. and Mrs. Thaller testified that Mr. Schmalz contacted them demanding payment and that they informed him that the punch list items were not yet complete and that once the punch list items were complete, that payment would be made in full. However, within days of Mr. Schmalz demanding payment, the Thallers testified that Fran Schmalz, the father and employee of Brian Schmalz, called Mr. Thaller informing him that Mr. Schmalz’s company was in a financial jam and asked Mr. Thal-ler if he would consider making a partial payment. Mrs. Thaller testified that on November 20, 2003, she met with Fran Schmalz at the job site and that Fran Schmalz agreed, on behalf of Mr. Schmalz, to have the job completed within the week. Mrs. Thaller then testified that, based on Fran Schmalz’s promise to complete the work that week, she issued a $10,000.00 check to Square Deal Siding Company, Inc. as a partial payment.
Mr. Schmalz testified that he sent Fran Schmalz to pick up the check. Mr. Schmalz also admitted that Fran Schmalz had the authority to agree to finish the job. Mr. Schmalz admitted that on November 21, 2003, one day after Mrs. Thal-ler issued the check for $10,000.00, he cashed the check and instructed his wife, *82 Julie Schmalz, to issue a ten day lien notice threatening to place a lien on the Thallers’ property.
|ifiMr. Schmalz, on cross-examination, admitted that Fran Schmalz’s agreement, on behalf of Mr. Schmalz, to finish the job within the week was merely a ploy to get the money from Mr. and Mrs. Thaller. Mr. Schmalz testified that Fran Schmalz had the authority to sign the agreement just “to get a check off of them.”
The Thallers testified that in the summer months in 2004, six months following the siding installation, they began noticing numerous defects in the siding, including buckling, pulling away, and siding that appeared to be improperly installed and not properly secured. The Thallers identified the photographs identified as Exhibit No. 6a-s, which reflected the defects in the siding, which included bowing of the siding, waiving in the siding, strange stepping up of seams, siding pulling away, utilities not reattached, and other defects due to improper installation.
Mrs. Thaller testified that she contacted various companies to attempt to repair the defective siding; however, she was advised repeatedly that the project could not be repaired. Mrs. Thaller testified that she contacted Mr. Arrant with LAS Enterprises, and that he advised that the siding needed to be replaced. Mr. Arrant provided an estimate for removing and replacing the siding in the amount of $28,285.00.
The trial court heard the testimony of the Thallers and Mr. Schmalz on the issues of whether the work was ever finished and whether Mr. Schmalz properly filed a lien against the Thallers’ property for the unpaid balance. The trial court found that Mr. Schmalz was unable to establish a prima facie case against the Thallers for the amount due. Our review of the testimony indicates that the trial court was presented with two permissible views of the evidence. Our review 117further indicates that the trial court was presented with a rational basis of facts upon which it could have rendered its determination. Where a rational basis exists for the factfinder’s determination, particularly considering the two permissible views, our standard of appellate review, the manifest error or clearly wrong standard, dictates affirmation of the factfin-der’s rational assessment of the evidence. Therefore, we find no merit in Mr. Schmalz’s argument that the trial court erred in its finding that Mr. Schmalz failed to establish a prima facie case against the Thallers and in dismissing his suit to enforce the lien.

Issue Seven: Whether the trial court erred in concluding that Mr. Schmalz filed a lien against the Thallers’ property one day after Mrs. Thaller paid $10,000.00 of the contract.

Mr. Schmalz argues that the trial court erred when it stated in its reasons for judgment that a lien was placed on the property on November 21, 2003. We first note that reasons for judgment are not controlling, and form no part of trial court judgments from which appeals are taken. Homes v. Long, 2002-0950, p. 3 (La.App. 4 Cir. 12/18/02), 835 So.2d 877, 878-879. Nonetheless, the trial court’s finding, in her reasons for judgment, that Mr. Schmalz filed a lien on November 21, 2003, rather than a ten-day lien notice is harmless error as all parties testified and acknowledged that the lien ultimately was not recorded until January 21, 2004. Accordingly, we find no merit in this assignment of error.

Issue Eight: Whether the trial court eired in concluding that the lien filed by Mr. Schmalz was an abuse of the lien privilege and was filed maliciously and recklessly.

Mr. Schmalz argues on appeal that he was not attempting to harm the *83 Thallers by filing the ten day lien notice, but rather was attempting to preserve his .claim to the balance of the contract price. The Thallers argue that Mr. Schmalz can not hide behind the requirements of the lien statute while at the same time 11scommitting fraud by lying to the Thal-lers as a way to obtain a partial payment on a job that Mr. Schmalz never intended to complete.
Again, the trial judge heard Mr. Schmalz testify to the fact that he sent his father to meet with the Thallers merely to pick up a check. The trial judge heard Mr. Schmalz testify that he never intended to finish the job and that his father agreed to finish the job merely to get the money from the Thallers. Further, Mr. Schmalz testified that he filed the ten day lien notice on the same day he cashed the $10,000.00 check, and that he filed the lien on the property in January 2004. Under these facts, we find the record supports the trial judge’s finding that Mr. Schmalz abused the lien privilege and that the lien was filed maliciously and recklessly.

Issue Nine: Whether the trial court properly awarded damages to Mr. Thal-ler.

Mr. Schmalz argues that because the property was quitclaimed by Mr. Thaller to Mrs. Thaller, he has no claim for damages and that the $25,000.00 award should be cut in half. We addressed this issue when denying the peremptory exception of no right of action and found that Mr. Thal-ler was a proper party to these proceedings. As such, we find no merit in this assignment of error.

Issue Ten: Whether the trial court erred in awarding $25,000.00 in damages to the Thallers.

On appeal, Mr. Schmalz argues that because there was no evidence as to the damages occasioned to the Thallers, other than the interest on the $5,000.00 held in escrow, the damage award was excessive and must be reduced. We find no merit in this assignment of error.
The trial judge, in her reasons for judgment, found the Thallers to be credible witnesses. As stated in the reasons for judgment:
_[_i(;Conversely, plaintiffs-in-reconvention presented credible testimony that the Court accepted. They successfully proved not only that the siding job in question was done improperly, but that the balance due ivas justifiably withheld and withheld in compliance with plaintiffs [Mrs. Thaller’s] agreement with Square Deal Siding Company. Most disturbingly, however, plaintiff[s]-in-re-convention proved that the lien placed on their property was a complete abuse of the lien privilege, filed maliciously and recklessly, (emphasis added).
The Thallers testified concerning the defects appearing in the siding by the summer of 2004, six months following the siding installation. Mrs. Thaller also testified that she was given an estimate of $28,285.00 to replace the siding. Further, the Thallers’ presented photographs to demonstrate the defects in the siding caused by the improper installation. We find that the record supports a reasonable factual basis for the trial court’s award of $25,000.00 in damages to remedy the defect caused by Mr. Schmalz in improperly installing the siding.
ANSWER TO APPEAL
In their answer to appeal, the Thallers request that the judgment be amended to award attorney’s fees in the amount of their contingency fee contract with their attorney of one-third, or a total award of attorney’s fees in the amount of $8,333.33. Further, the Thallers request that additional attorney’s fees be awarded for defending the case on appeal.
*84 It is well-established that attorney fees are not allowed except where authorized by statute or contract. State. Dept. of Transp. and Development v. Williamson, 597 So.2d 439, 441 (La.1992). We have found no statute providing for attorney fees when a party sues to recover from the wrongful filing of a lien. Although the Thallers cite to various cases whereby appellate courts have affirmed judgments of the trial court that have awarded attorney’s fees, we find no statute that gives this Court the authority to do so. Accordingly, we do not find theJ^Thallers are entitled to an award of attorney’s fees under the facts of this particular case.
Although the Thallers ask for additional attorney’s fees for work performed on appeal, an increase in attorney fees is generally awarded when a party who was awarded attorney fees in the trial court is forced to and successfully defends an appeal. See Sam v. Jhane Home Health Care Services, Inc., 95-0081 (La.App. 4 Cir. 6/07/95), 657 So.2d 559. Given the fact that the Thallers failed to recover attorney’s fees in the trial court, as well as this Court, we find no merit to their argument for additional attorney’s fees.
For these reasons, we hereby grant the motion to strike, we deny the exception of no right of action, and in all other respects the judgment of the trial court is affirmed.
MOTION TO STRIKE GRANTED; EXCEPTION OF NO RIGHT OF ACTION DENIED; JUDGMENT OF THE TRIAL COURT AFFIRMED.
BELSOME, J., concurs in part and dissents in part.
BELSOME, J., concurs in part and dissents in part.
Li dissent in the majority’s failure to award attorney’s fees.
Damages for wrongly filed liens are permissible when the lien recordation is made in bad faith or with malice. See Dickson v. Moran, 344 So.2d 102, (La.App. 2 Cir.1977) and Grover v. Carter, 498 So.2d 132 (La. App. 5 Cir.1987). This record establishes that Mr. Schmalz accepted a $10,000.00 partial payment upon the condition that all punch list items would be completed prior to the balance being paid. He testified in court that he had no intention of completing the punch list items, but agreed to those terms in order to get the $10,000.00. He subsequently filed a lien for the balance of the contract without meeting the agreed upon conditions. Clearly, Mr. Schmalz acted in bad faith.
Accordingly, attorney’s fees should have been awarded at the trial court level and additional fees at the appellate level. Therefore, a minimum amount of $15,000.00 in attorney’s fees should be awarded to the Thallers.
I join the majority in all other aspects of the opinion.

. The suit to enforce the lien was initially erroneously filed on behalf of Square Deal Siding Company, Inc. and thereafter amended to name the proper party, Brian C. Schmalz.